UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADNAN ASIF USMANI : | |
| MARGARET POWERS : | |
| Petitioners, : | CIV. NO. 3:02cv2015(DJS) |
| v. : | |
| ETHAN ENZER, IMMIGRATION : | |
| AND NATURALIZATION : | |
| SERVICE, Et Al. : | March 15, 2004 |
| Respondents. : | |

**RESPONSE TO THE PETITION FOR A WRIT OF HABEAS CORPUS**

Respondent, Ethan Enzer, Acting Officer in Charge of the Immigration and Naturalization Service[1] ("INS"), respectfully submits the instant response to the petitioner's petition for writ of habeas corpus and requests that the petition be dismissed.

**BACKGROUND**

Petitioner, Adnan Usmani ("Usmani") a native and citizen of Pakistan, entered the United States on or about September 21, 1991, as a nonimmigrant B-2 with authorization to remain in the United States for a temporary period not to exceed March 20, 1992. (See Exhibit A, Notice to Appear). Because Usmani remained in the United States beyond March 20, 1992 without authorization of the

---

[1] On March 1, 2003, the Immigration and Naturalization Service ("INS") was abolished and its functions transferred to three bureaus within the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2178. The enforcement functions of INS were transferred to the Bureau of Immigration and Customs Enforcement ("BICE") while its service functions were transferred to the Bureau of Citizenship and Immigration Services ("BCIS").

INS, deportation proceedings were commenced against him. (See id.) On June 22, 1998, in lieu of deportation, an immigration judge ("IJ") permitted Usmani to voluntarily depart from the United States pursuant to 8 U.S.C. § 1229c by October 22, 1998. (See Exhibit B, Order of the Immigration judge). Usmani waived his right to appeal the IJ's order to the Board of Immigration Appeals ("BIA"). (See id.) On that same day, Usmani was advised that his failure to voluntarily depart by October 22, 1998 would result in him being ineligible for various forms of relief, including adjustment of status for ten years from the date of his voluntary departure date. (See Exhibit C, Limitations on Discretionary Relief for Failure to Appear). When Usmani failed to voluntarily depart by October 22, 1998, the IJ's alternative order of deportation to Pakistan became effective. (See Exhibit B).

On or about October 22, 1998, Usmani married Margaret Powers ("Powers"), a United States citizen, in Providence, Rhode Island. Usmani remained illegally in the United States until October 17, 2002, when he was taken into custody by the INS.[2] (See Exhibit D, Record of Deportable/Inadmissible Alien) On or about October 30, 2002, Powers filed a Petition for Alien Relative (Form I-130) to obtain a visa for her husband. That petition was subsequently granted by the INS.

---

[2] Usmani is presently not in custody as he was released on $50,000 bond.

ARGUMENT

Usmani claims that because the IJ's order did not specifically advise him of the consequences of failing to depart, he is not statutorily barred from adjusting his status under § 245 of the Immigration and Nationality Act ("INA"). This claim is disingenuous at best considering the fact that Usmani concedes that he received actual notice of the penalties if he failed to voluntarily depart by October 28, 1998, including his inability to adjust his status for ten years. Moreover, even if there were merit to Usmani's claim (which the Respondent maintains there is not), the Court lacks jurisdiction to review this claim because Usmani has failed to exhaust his administrative remedies.

### I.   Failure To Take An Appeal To The BIA

This Court lacks subject matter jurisdiction to entertain Usmani's petition for writ of habeas corpus because he failed to exhaust his administrative remedies. Specifically, Usmani's waiver of his right to appeal to the BIA is a failure to exhaust his administrative remedies for jurisdictional purposes. Consequently, the Court lacks jurisdiction to review petitioner's habeas claims relating to his final order of deportation. See Theodoropoulos v. INS, No. 01-2715, 2004 WL 49118, *7 (2d Cir. Jan. 12, 2004).

The INA requires that all available administrative remedies be exhausted before seeking judicial review. See 8 U.S.C. 1252(d) (Supp. IV 1998) ("A court may review a final order of removal only

if . . . the alien has exhausted all administrative remedies available to the alien as a right."). This exhaustion requirement constitutes a "clear jurisdictional bar, and admits no exceptions." Mejia-Ruiz v. INS, 51 F.3d 358, 362 (2d Cir. 1995) (quoting Rolden v. Racette, 984 F.2d 85, 90 (2d Cir. 1993)); see also Bastek v. Fed. Crop. Ins., 145 F.3d 90, 94 (2d Cir. 1998) (holding that statutory requirements are mandatory, and courts are not free to dispense with them).

Here, Usmani's waiver of his right to appeal to the BIA constitutes a failure to exhaust his administrative remedies for jurisdictional purposes. See Theodoropoulos, 313 F.3d at 736-37. This failure to appeal renders his claims outside the jurisdiction of the federal courts. As such, Usmani's habeas petition should be dismissed as a matter of law.

## II. **Petitioner Is Ineligible To Adjust His Status**

Even assuming the Court has jurisdiction to review Usmani's claims, he is statutorily barred from the relief he seeks, i.e., adjustment of status, because he failed to voluntarily depart by October 22, 1998. His claim that he is eligible to adjust his status notwithstanding the fact that he knowingly violated 8 U.S.C. § 1229c because the IJ's order did not specifically include the penalties for failure to depart is without merit.

It is undisputed that Usmani agreed to voluntarily depart the United States by October 22, 1998. Indeed, as Usmani himself

concedes, he was afforded the substantial benefit of voluntary departure pursuant to 8 U.S.C. § 1229c in lieu of deportation to Pakistan. This was so despite the fact that he was illegally in the United States since March 2, 1992, was given the benefit of voluntary departure. Had he voluntarily departed he would have been eligible for readmission under normal immigration procedures. As Usmani further concedes, he was advised as part of those deportation proceedings that if he failed to voluntarily depart by October 22, 1998, he would be subject to a civil penalty and he would be ineligible for various forms of relief under the INA for ten years. (See Exhibit C). Instead he chose to violate the voluntary departure order knowing there would be severe consequences for such conduct. His claim that the penalties associated with failing to depart should not apply to him because they were allegedly not included in the IJ's order is form over substance. Usmani had actual knowledge of the penalties for failing to voluntarily depart and thus there is no prejudice to him by enforcing those penalties. As such, because he failed to voluntarily depart pursuant to 8 U.S.C. § 1229c, he is ineligible to adjust his status under 8 U.S.C. § 1255 for ten years or until October 22, 2008.[3]

---

[3]Under normal circumstances Usmani, as the beneficiary of an approved alien relative petition, would be eligible to adjust his status to that of a spouse of a United States citizen. Again, because he did not voluntarily depart as required, 8 U.S.C. § 1229c(d) precludes him from even being eligible for adjustment of

Usmani cannot now benefit from his own failure to follow the law. Substantial injury to the INS and the public interest would result if the Court granted Usmani the relief he seeks. If the Court permitted him to remain in the United States and to apply for adjustment of status the voluntary departure statute would be a nullity. That is, aliens granted the privileges that accompany voluntary departure would no longer leave if they knew they would not be subject to a removal order or the other penalties proscribed by statute. Usmani knowingly chose to violate § 1229c and thus he must now deal with the adverse consequences of that decision if that statute is going to have any force of law.[4] Congress proscribed the penalties for violating the statute and this Court should interfere with this legislative determination.

---

status. Usmani would be eligible to adjust his status if his final order was reopened. The INS, however, declined to join in a motion to reopen due to Usmani's statutory bar and in any event concluded that he did not merit a favorable act of discretion. (See Exhibit E, Letters from John Marley to Usmani's Counsel) Thus, even if there was no statutory bar to Usmani's adjustment of status, the INS would decline to join in a motion to reopen on purely discretionary grounds. Nonetheless, to date Usmani has never sought to reopen his final order. In the event Usmani filed a motion to reopen and it was denied on discretionary grounds, he would have no recourse to challenge such a discretionary determination. See Sol v. INS, 274 F.3d 648 (2d Cir. 2001).

[4] The Respondent notes that BCIS cannot adjudicate an application to adjust status for an alien who seeks to adjust status based on a marriage on or after November 10, 1986 and while the alien was in removal proceedings subject to certain exemptions. See 8 C.F.R. § 245.1(c)(9) ("aliens ineligible to adjust"); 8 C.F.R. § 245.1(c)(9)(iii).

**CONCLUSION**

    For all of the foregoing reasons Usmani's petition should be dismissed as a matter of law.

                  Respectfully submitted,

                  KEVIN J. O'CONNOR
                  UNITED STATES ATTORNEY

By: _____
     DOUGLAS P. MORABITO
     ASSISTANT UNITED STATES ATTORNEY
     Federal Bar No. ct20962
     157 Church Street, 24th Floor
     New Haven, CT 06510

**CERTIFICATION OF SERVICE**

    This is to certify that a copy of the foregoing was sent via first class overnight mail, March 15, 2004, to:

James E. Swaine, Esq.
18 Trumbull Street
New Haven, CT 06511
Fax: (203)603-4423

By: _____
     DOUGLAS P. MORABITO
     ASSISTANT UNITED STATES ATTORNEY